**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2010

No. 09-70026

Lyle W. Cayce
Clerk

JOHN LEZELL BALENTINE

Petitioner - Appellant

v.

RICK THALER, Director, Texas Department of
Criminal Justice, Correctional Institutions Division

Respondent - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

John Lezell Balentine, a Texas prisoner sentenced to death, appeals the denial of his motion to set aside the judgment that a year earlier had denied him habeas corpus relief. We find the prior judgment should have been set aside because of a subsequent state court ruling. We REVERSE and REMAND for an evidentiary hearing on whether Balentine's trial counsel ineffectively investigated for mitigation evidence to present during sentencing.

PROCEDURAL HISTORY

Balentine confessed that on January 21, 1998, in Amarillo, Texas, he murdered three teenagers, Mark Caylor, Jr., Kai Geyer, and Steven Brady

No. 09-70026

Watson. The details of the crime are set out in *Balentine v. Quarterman*, No. 2:03-CV-00039, 2008 WL 862992, at *2 (N.D. Tex. Mar. 31, 2008).

There have been several separate actions to determine Balentine's guilt for the murders and then to review that determination in state and federal court. We summarize the proceedings that have led to today's appeal.

A. *Trial, Sentencing, and Direct Appeal*

In April 1999, a jury found Balentine guilty of capital murder and sentenced him to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence on April 3, 2002. *Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002).

B. *First State Habeas Application*

Balentine filed a state post-conviction application for writ of habeas corpus on January 22, 2001, which would have been before proceedings on the direct appeal were final. Twenty-one grounds for relief were stated, the first fourteen all challenging the constitutionality of the Texas death penalty scheme. The only identified issue concerning sentencing was that counsel was ineffective by not presenting any evidence at the sentencing hearing. The state district court denied relief on October 18, 2002. The Court of Criminal Appeals, after adopting the trial judge's findings and conclusions, also denied relief on December 4, 2002. *Ex parte Balentine*, No. WR-54,071-01 (Tex. Crim. App. Dec. 4, 2002) (not designated for publication).

C. *First Federal Habeas Application*

Balentine filed an application for writ of habeas corpus in the United States District Court for the Northern District of Texas on December 1, 2003, then filed an amended application on August 19, 2004. *See* 28 U.S.C. § 2254. He alleged nine grounds of error, including a denial of a right to individualized sentencing under the Eighth Amendment. The crux of such a claim is that a defendant did not receive an individualized sentence because no mitigating

2

evidence was presented at trial. *See Lockett v. Ohio*, 438 U.S. 586 (1978). After securing new counsel, Balentine detailed – for the first time in any court – the mitigation evidence that could have been presented had there been proper investigation. That evidence included affidavits by family members and experts. The magistrate judge issued a Report and Recommendation finding Balentine not entitled to relief because the claims relating to mitigating evidence were unexhausted and procedurally barred.

Balentine objected to the Report and Recommendation on December 21, 2007. He also requested that the district court stay the federal proceedings so that he could return to state court to exhaust the mitigation claims. The district court denied the motion on March 31, 2008. This denial of a stay is a key procedural point in our review of the decision on the Rule 60(b) motion. Also on March 31, 2008, and then on reconsideration on May 30, 2008, the district court overruled all objections to the Report and Recommendation.

Balentine appealed the denial of his habeas petition to this court. We affirmed on April 13, 2009. *Balentine v. Quarterman*, 324 F. App'x 304, 305-06 (5th Cir.), *cert. denied*, 130 S. Ct. 484 (2009).

D. *Successive State Habeas Application*

On August 21, 2009, Balentine filed a subsequent habeas application in state district court pursuant to Section 5 of Texas Code of Criminal Procedure Article 11.071. He alleged that he was deprived of his Sixth Amendment right to effective assistance when his trial counsel did not investigate, develop, and present mitigation evidence in the punishment phase of the trial. He also alleged a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The Court of Criminal Appeals dismissed the application. *Ex parte Balentine*, Nos. WR-54071-01, WR-54071-02, 2009 WL 3042425 (Tex. Crim. App. Sept. 22, 2009).

No. 09-70026

E. *Motion for Rule 60(b) Relief from the Federal Court Judgment*

On September 23, 2009, Balentine filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) in federal district court. The judgments from which relief was sought were those of March and May 2008, denying his Section 2254 claims. Balentine argued that the Court of Criminal Appeals's September 22, 2009 dismissal of his application did not constitute an independent and adequate ground that would bar review of the claim. He requested an evidentiary hearing on the merits of his claim that counsel had been ineffective by failing adequately to search for mitigating evidence.

On September 28, 2009, the district court denied relief from judgment and stay of execution. The court rejected Balentine's argument that the Court of Criminal Appeals's decision of September 22, 2009 had invalidated the district court's 2008 ruling that an unexhausted claim of ineffective assistance of counsel was procedurally barred. The district court found that the Court of Criminal Appeals had not ruled on the merits of the claim on September 22, 2009 and the claim therefore remained procedurally barred.

The district court granted a certificate of appealability. Balentine now appeals the district court's denial of Rule 60(b) relief, claiming that the September 22, 2009 decision of the Court of Criminal Appeals constituted a determination on the merits of Balentine's ineffective assistance of counsel claim. Therefore, he argues, the ineffective assistance of counsel claim is no longer procedurally defaulted and the federal courts should review it on the merits.

## DISCUSSION

The language of Rule 60(b)(6) is brief, but its reach is broad. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason that justifies relief." We have described this Rule as a powerful one:

4

> Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present.

*Batts v. Tow-Motor Forklift Co.,* 66 F.3d 743, 747 (5th Cir. 1995) (citations and internal quotation marks removed).

The equitable power of the district court judge is to be exercised with discretion, while our appellate examination is for whether the discretion was abused. *Dunn v. Cockrell*, 302 F.3d 491, 492 (5th Cir. 2002).

A. *Is This a New Claim under AEDPA?*

The relief that is available under Rule 60(b) in habeas proceedings must be granted consistently with the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Ruiz v Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007); 28 U.S.C. § 2244(b). The Supreme Court has described how AEDPA and Rule 60(b) motions operate in harmony. *Gonzalez v. Crosby*, 545 U.S. 524 (2005). Under AEDPA, any successive habeas claim that has not already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. *Id*. at 530.

Where a Rule 60(b) motion raises a new habeas claim, the motion is considered a successive habeas application: "Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction – even claims couched in the language of a true Rule 60(b) motion – circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Gonzalez*, 545 U.S. at 531.

But there is no new habeas claim where a petitioner "merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id*. at 532 n.4. "If neither the [Rule 60(b)] motion

itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id.* at 533.

Balentine now alleges that he received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment, when his initial counsel failed to investigate mitigating evidence for the sentencing phase of his trial.[1] *See Wiggins v. Smith*, 539 U.S. 510 (2003). The State argues that Balentine's initial federal habeas application never raised a Sixth Amendment claim for counsel's failure to investigate mitigating evidence. If that is so, then Balentine's Rule 60(b) motion raised a new claim that constitutes a successive habeas application barred by AEDPA. *See* § 2244(b)(2). Consequently, whether AEDPA requires dismissal of Balentine's Rule 60(b) motion in part depends on when the issue of ineffective assistance for failure to investigate mitigating evidence was first presented in earlier proceedings.

A claim of ineffective assistance of counsel for failure to investigate mitigation evidence was not raised on direct appeal. Nor was a claim of failure to *investigate* mitigation evidence presented in the state habeas application that was filed in 2002. Instead, the initial state habeas application made a weak assertion of a failure to *present* mitigation evidence.

We now look for whether Balentine raised the *Wiggins* claim in federal district court in his Section 2254 habeas petition, filed in 2003 and amended in 2004. The State contends that Balentine's federal habeas petition did not state a Sixth Amendment claim of ineffective assistance for counsel's failure to investigate and present mitigating evidence. Rather, the State asserts that any claim regarding mitigation was an Eighth and Fourteenth Amendment challenge.

---

[1] The State essentially concedes that Balentine's initial defense counsel failed to investigate for or present mitigation evidence during the sentencing phase.

The relevant section of Balentine's federal habeas application was titled "Ground Eight (IAC [Ineffective Assistance of Counsel] – *Lockett* Doctrine & Risk Assessment): Balentine was denied his federal Eighth and Fourteenth [A]mendment rights to individualized sentencing. Trial counsel failed to present any evidence at all in the punishment phase." This section of the application asserted that the trial counsel's performance was "deficient." It included five arguments in support of counsel's constitutional deficiency with regard to mitigating evidence. The application then stated that such "deficient performance of trial counsel raises a reasonable probability that the outcome would have been different" and cites to the Sixth and Fourteenth Amendments, and to *Strickland v. Washington*, 466 U.S. 668 (1984).

The general rule is that *arguments* not raised before the district court are waived on appeal. *State Indus. Prods. Corp. v. Beta Tech., Inc.*, 575 F.3d 450, 456 (5th Cir. 2009). The errant heading in a brief does not waive an argument. Balentine raised a Sixth Amendment argument. Both the magistrate judge and this court ruled on it. *See Belt v. Emcare, Inc.*, 444 F.3d 403, 409 (5th Cir. 2006) (holding that an issue is preserved for appeal where "the issue was sufficiently raised for the court to rule on it").

The section's title gave some misdirection with the reference to *Lockett*, but Balentine's claim was nonetheless for ineffective assistance of counsel. The section title contained counsel's acronym for ineffective assistance of counsel, IAC, and stated that "counsel failed to present any evidence at all in the punishment phase." Additionally, Balentine presented his argument in terms of *Strickland v. Washington* and *Wiggins v. Smith*, both Sixth Amendment ineffective assistance of counsel cases. Further, the section's subheadings tracked the two-prong test for ineffective counsel. Subheading 2 was titled "Trial counsel's performance was deficient," and subheading 3 was titled "The deficient performance raises a reasonable probability that the outcome would have been

different." The magistrate judge properly recognized the claim as an ineffective assistance of counsel claim and ruled on it, and on appeal this court considered the claim to be one for ineffective assistance. *Balentine*, 324 F. App'x at 305-06.

Thus, Balentine's federal habeas application stated a Sixth Amendment ineffective assistance of counsel claim, and the Rule 60(b) motion does not present a new habeas claim barred by AEDPA.

B. *Did the Texas Court of Criminal Appeals Rely on an Independent and Adequate State Ground Precluding Federal Merits Review?*

The next key issue is whether the state court reached the merits of the claim or instead ruled that the habeas application was procedurally flawed. This distinction matters in a Section 2254 proceeding because we do not reach the merits when the state court denied relief due to a state law that provides an adequate basis for the decision, independent of the merits of the federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). The Supreme Court has held that if the state court decision rests "primarily on federal law" or the state and federal law are interwoven, and if "the adequacy and independence of any possible state law ground is not clear from the face of the opinion," we will construe the state court ruling as one applying federal law. *Ruiz v. Quarterman*, 504 F.3d 523, 527 (5th Cir. 2007) (quoting *Michigan v. Long,* 463 U.S. 1032, 1040-41 (1983)). An independent and adequate state ground must be express in order to avoid the *Michigan v. Long* default rule. *Finley*, 243 F.3d at 218.

Consequently, if the Texas Court of Criminal Appeals did not clearly rely on an independent state ground in its September 22, 2009 order, we will conclude that it reached the merits and did not reject the claim for not having been exhausted. Such a conclusion would undermine our failure to stay the federal suit in 2008 in order to allow the claim to be presented first in state court, a refusal based on the view that the state would not countenance such a claim.

8

No. 09-70026

We now apply these principles to the state court order.

By statute, a Texas state prisoner has a limited right to have a successive application for habeas relief considered in state court.

(a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

(1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

(2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

(3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Ann. art. 11.071, § 5(a).

The application may be filed in the court of conviction, but the clerk of that court is to send the application to the Court of Criminal Appeals. *Id.* § 5(b). The Court of Criminal Appeals then decides whether one of the limited bases for consideration of the application on the merits has been shown.

On August 21, 2009, Balentine filed a successive application. In a two-page order, the Court of Criminal Appeals first summarized the prior proceedings. It then addressed the most recent filing:

Applicant presents two allegations in his application. In the first allegation, applicant asserts that he was deprived of his Sixth Amendment right to effective assistance of trial counsel because counsel failed to adequately investigate, develop, and present mitigation evidence in the punishment phase of the trial. In his second allegation, applicant asserts that the prosecution

9

No. 09-70026

unconstitutionally exercised peremptory challenges on two venire persons in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We have reviewed the application and find that his allegations fail to satisfy the requirements of Article 11.071 § 5. Accordingly, applicant's application is dismissed, and his motion to stay his execution is denied. Likewise, applicant's motion to vacate the judgment rendered in his initial state writ application is denied, and the Court otherwise declines to reconsider that case.

*Ex parte Balentine*, Nos. WR-54071-01, WR-54071-02, 2009 WL 3042425 (Tex. Crim. App. Sept. 22, 2009).

We find substantial guidance for interpreting the Court of Criminal Appeals's order in *Ruiz v. Quarterman*, 504 F.3d 523. The procedural steps in *Ruiz* were the same as here – direct appeal, state habeas, federal habeas, successive application in state court, then a Rule 60(b) motion in federal court. *Id.* at 525-26. There we concluded that the Court of Criminal Appeals order denying relief on the second habeas application could not be considered a decision based on independent and adequate state grounds. *Id.* at 526. Part of the reason was the fact that there were only four votes at the Court of Criminal Appeals for the lead opinion that denied the writ; the judge casting the fifth vote necessary for the decision reached the merits. *Id.* at 527. Such vote-counting is not involved in Balentine's Court of Criminal Appeals decision.

However, another reason *Ruiz* found that the Texas Court of Criminal Appeals could not be said to have ruled on an independent state ground was because the Texas court, in an earlier case, explained how it reached decisions such as *Ruiz. Id.* at 527. In 2007, the Court of Criminal Appeals held that satisfying Section 5 of Article 11.071 had two separate components:

> 1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence.

10

*Ex parte Campbell,* 226 S.W.3d 418, 421 (Tex. Crim. App. 2007) (discussed in *Ruiz*, 504 F.3d at 527). On that basis, *Ruiz* concluded that a "boilerplate dismissal by the [Court of Criminal Appeals] of an application for an abuse of the writ is itself uncertain on this point, being unclear whether the [Court's] decision was based on the first element, a state-law question, or on the second element, a question of federal constitutional law." *Ruiz*, 504 F.3d at 527.

The district court in *Ruiz* had held, when rejecting the Section 2254 application, that a stay and a return to state court would be futile because the claim had not been exhausted the first time. *Id.* at 525. Futile or not, Ruiz returned to state court and got the ruling from the Court of Criminal Appeals that we construed as merits-based. As the *Ruiz* opinion put it, this merits ruling "pulled the ground from under the federal district court's earlier judgment dismissing the claim and refusing to hold the federal claim in abeyance while Ruiz returned to state court with his unexhausted claim." *Id.* at 525.

Importantly, the Court of Criminal Appeals's ruling in *Ruiz* that was construed as one on the merits is not readily distinguishable from the one here. The September 22, 2009 ruling stated that Balentine's "allegations fail to satisfy the requirements of Article 11.071, § 5." Under the Court of Criminal Appeals's explanation in *Campbell*, that denial could have been a decision that the facts were previously available and no excuse from presenting the claim earlier existed – an adequate and independent state ground – or that denial could have been based on a finding that the facts as alleged did not indicate a federal constitutional violation.

There is at least one distinction, though, besides the lack of a five-vote majority in *Ruiz*, between the state court order in *Ruiz* and the order here. The distinction helps Balentine. In the *Ruiz* four-judge order, the Texas Court of Criminal Appeals said that the application was dismissed as "an abuse of the writ," but that phrase does not appear in the same court's Balentine order.

No. 09-70026

The "abuse of the writ" language is significant because of our decision in *Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008). The *Hughes* court neither cited *Ruiz* nor discussed the decision of the Court of Criminal Appeals in *Campbell*. The *Hughes* court held that a finding by the Texas court that a second application was an "abuse of the writ" could be considered an adequate state ground independent of the merits of the federal claim. *Id.* at 342. The Court of Criminal Appeals order in *Hughes* said that the application "fails to satisfy the requirements of Art. 11.071, Sec 5(a), V.A.C.C.P. Accordingly, the application is dismissed as an abuse of the writ." *Ex parte Hughes*, No. 45-876-02 (Tex. Crim. App. Nov. 14, 2001) (not designated for publication).

Because the "abuse of the writ" language was not included in the Court of Criminal Appeals's order on Balentine's successive state habeas application, *Hughes* has no direct applica.tion. True, the statute itself says that a successive application that fails to satisfy its requirements (presumably either for procedural or for merits reasons) should be dismissed as an "abuse of the writ." Tex. Code. Crim. Proc. art. 11.071, § 5(c). However, giving our imprimatur to the statute's unvarying "abuse of the writ" label when a second state habeas application is denied, is inconsistent with our precedents. For example, we have held that the Texas abuse of writ approach could not always be considered a procedural ruling because at times it requires a determination of whether a prima facie constitutional claim has been shown:

> Although Texas' abuse of the writ doctrine is superficially procedural in that it has a procedural effect, [because it leads to] determining which claims are remanded to the state trial courts for further development, it steps beyond a procedural determination to examine the merits of an *Atkins* claim.

*Rivera v. Quarterman*, 505 F.3d 349, 360 (5th Cir. 2007). Similarly, the *Campbell* explanation by the Court of Criminal Appeals reveals that the court may rule on the basis that "the specific facts alleged, if established, would constitute a

12

No. 09-70026

constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell,* 226 S.W.3d at 421. Further, a ruling that the facts, if established, did *not* constitute a violation would also be "interwoven" with federal constitutional law.

Regardless of the effect of *Hughes* and its focus on "abuse of the writ" language in a Texas Court of Criminal Appeals order, we give some weight to the absence of express language of "abuse" in Balentine's order from that court. We give weight because of the interplay between the responsibilities and procedures of state and federal courts in this area: each court likely is attentive or at least aware of the effects of its decision on the other. The *Ruiz* court believed that how the federal courts will react to the language of a state court habeas decision is "a rote rule at the fingertips of every writing member of state courts of last resort – where studied ambiguity or clarity in the decisional footing is an art form and an absence of clarity in an opinion is seldom inadvertent." *Ruiz*, 504 F.3d at 527. We do not decide that the absence of "abuse of the writ" language was an omission meant for our eyes, but we see it all the same.

Moreover, to the extent there is inconsistency between *Hughes* and the careful examination of abuse of the writ determinations required by *Ruiz* and *Rivera* – and *Hughes* did not address either precedent – we are bound by the decisions predating *Hughes* because one panel cannot overrule earlier decisions. *United States v. Castro-Guevarra*, 575 F.3d 550, 552 (5th Cir. 2009). *Ruiz* compels us to construe the September 22, 2009 Court of Criminal Appeals ruling as one on federal grounds, because it was not clearly based on an adequate state ground independent of the merits.

C. *Does* Ruiz *Require Reversal Here?*

To succeed on his Rule 60(b)(6) motion, Balentine must demonstrate a basis for relief from the district court's 2008 judgment, as affirmed by this court. The issue before the district court in late September 2009 was whether something

13

about the Court of Criminal Appeals September 22, 2009 decision was a basis to overturn the district court's 2008 judgment that the *Wiggins* claim could not be exhausted at that late date.

The Supreme Court has considered whether a Rule 60(b) motion, filed several years after the inmate's Section 2254 application had been denied, was an available procedural option. *Gonzalez v. Crosby*, 545 U.S. at 527-28. Although a Rule 60(b) motion should be denied if it challenges on the merits an earlier denial of habeas relief,

> [t]hat is not the case . . . when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.
>
> When no "claim" is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application. If neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules.

*Id.* at 532-33 (footnote omitted).

This means that in order for Balentine to proceed, he must have raised in his Rule 60(b) motion something other than a merits-based ruling in the earlier judgment. Balentine argues that on September 22, 2009, the Court of Criminal Appeals reached the merits, thereby vitiating our earlier conclusion that the unexhausted claim was no longer a viable one in state court. According to Balentine, this is not an attack on a merits ruling in the earlier federal decision, but an undermining of a procedural ruling regarding the inability of Balentine to exhaust.

For guidance in analyzing whether there was anything vitiating about the Texas court's latest Balentine ruling, we again turn to *Ruiz*, the seminal application of *Gonzalez* in this Circuit. The district court in Ruiz's Section 2254

No. 09-70026

proceedings denied habeas relief because his ineffective assistance claims were procedurally defaulted. As we explained on appeal,

> the district court made clear that his ruling rested on his conclusion that "Texas law precludes petitioner from obtaining a ruling on the merits of his currently unexhausted claims . . . in a successive state habeas corpus application." Ruiz's federal counsel asked the federal district court to stay the federal proceeding to allow Ruiz to return to state court to exhaust the ineffective-assistance claim, pointing to the [Court of Criminal Appeals's] then-recent abandonment of its refusal to accept a state court habeas application so long as the petitioner had a federal habeas petition pending.

*Ruiz*, 504 F.3d at 525. Ruiz had appealed the initial denial of relief, and we affirmed. *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006).

At the time the *Ruiz* federal district court made its first rulings, Texas had not abandoned its bar to successive petitions. *Ruiz*, 504 F.3d at 529. However, after the district court's ruling, Texas undermined that barrier:

> While the district court's conclusion of futility was sound when made, it has been undermined by recent decisions by the [Court of Criminal Appeals]. In January 2007, the [Court of Criminal Appeals] decided *Ex parte Hood,* [211 S.W.3d 767 (Tex. Crim. App. 2007),] indicating for the first time that there are judicially-created exceptions to section five. Before this decision, neither Ruiz nor the district court had reason to believe that the [Court of Criminal Appeals] would create an equitable exception to the successor bar. On April 25, 2007, the [Court of Criminal Appeals] decided *Ex parte Campbell,* [226 S.W. 3d 418 (Tex. Crim. App. 2007),] which, as we explained above, held that the Texas procedural bar based on factual unavailability incorporates a question of federal constitutional law. Before this decision, neither Ruiz nor the district court had any basis to view the state successor provision as anything but an independent and adequate state ground.

*Id.*

After this court's initial affirmance, Ruiz returned to state court and received a ruling from the Court of Criminal Appeals. Its unpublished order stated, "We have reviewed these claims and find that they do not meet the

15

requirements for consideration of subsequent claims under Article 11.071, Section 5. This application is dismissed as an abuse of the writ . . . ." Losing in state court, Ruiz filed his Rule 60(b)(6) motion in federal district court. It was denied. *Ruiz*, 504 F.3d at 529.

On appeal, we held that this was a proper Rule 60(b)(6) motion. We quoted language from *Gonzalez* that there is no new habeas claim if a petitioner "merely asserts that a previous ruling which precluded a merits determination was in error – for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Gonzalez*, 545 U.S. at 532 n.4.

We now turn to the case before us. Like Ruiz, Balentine requested a stay of the federal proceedings so he could return to state court to exhaust the ineffective assistance claim, and that stay was denied in 2008. The relief from judgment that Balentine seeks now is to set aside the 2008 decision not to enter a stay that would have allowed him to return to state court. We have already determined that, subsequent to that 2008 denial, Balentine received a "merits" ruling from the Court of Criminal Appeals. He returned to state court without a stay, exhausted his *Wiggins* claim under our construction of the Court of Criminal Appeals's order, and is now back. Balentine now seeks to be put in the position a stay would have placed him in his initial Section 2254 proceeding; granting him relief from the 2008 denial of a stay would allow him to proceed as if this were the original Section 2254 application, exhaustion completed.

We now analyze whether the stay was properly denied in 2008. The rules for entering stays were well-explained by the district court at that time. Prior to AEDPA, federal petitions were dismissed, not stayed, so that petitioners could return to state court. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982). With AEDPA, though, a one-year deadline was created, which meant such a practice would almost certainly bar the inmate on his return to federal court after the renewed state proceedings concluded. *See* 28 U.S.C. § 2244(d). After AEDPA, the

Supreme Court allowed Section 2254 proceedings to be stayed in quite limited situations. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The limits were created by AEDPA's rules, which sought to reduce delays in the post-conviction relief process, require total exhaustion, and, joining those two concerns, prevent inmates from piecemealing their claims. *Id.* at 276.

To meet AEDPA' commands as well as serve the interests presented in stay requests, this balance was required:

> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.* at 277.

In its March 31, 2008 order denying Balentine a stay, the district court quoted this part of *Rhines*. The district court concluded that Balentine's return to state court with a second habeas application would have been futile. The order cited one of our first opinions to apply *Rhines*, which held a state procedural bar would make a claim "meritless" under *Rhines*. *See Neville v. Dretke*, 423 F.3d 474, 479-80 (5th Cir. 2005). The district court found that Balentine's unexhausted *Wiggins* claim would encounter such a procedural bar. The district court also concluded that even if at times the Court of Criminal Appeals ignored procedural bars – "occasional acts of grace" – the state rule would remain an adequate one because the procedural bar must be applied "regularly" but need not always be applied. *See Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995).[2]

---

[2] Our reversal both here and in *Ruiz*, after construing the Court of Criminal Appeals's orders as merits-based, could be seen as ignoring the "regular" versus "always" dichotomy. However, we are not considering what the state court might have done in some hypothetical

No. 09-70026

Then on September 28, 2009, the district court denied relief from its 2008 judgment. It found that the Court of Criminal Appeals's September 22, 2009 order was not on the merits. It analyzed *Ruiz* as being limited to its peculiar facts of a hard-to-decipher split vote at the Court of Criminal Appeals. The district court also concluded that the *Hughes* "abuse of the writ" language made the Texas court's ruling an independent and adequate state ground.

We find only one flaw in this reasoning, but it affects all the conclusions. We have explained why we do not consider *Ruiz* to be a case limited to the peculiar facts of the four-vote Court of Criminal Appeals decision. Because we have found *Ruiz* to require us to hold that the Court of Criminal Appeals decided the case on the merits, the rest of the district court's ruling also falls.

The *Ruiz* court held that the equities relevant to Rule 60(b)(6) applied to the "re-considering [of] a dismissal of a claim now freed of the baggage threatening the jurisdiction of the court." *Ruiz*, 504 F.3d at 531. Therefore, in reviewing the denial of Rule 60(b) relief in *Ruiz*, the opinion weighed the equities under Rule 60(b). *Id.* at 528-32. The *Ruiz* court noted that the district court, in its opinion denying the original Section 2254 application, had found Ruiz's claims of ineffective assistance of counsel to be "significant, potentially meritorious" arguments that could not be reached by the court because of the failure to exhaust. *Id.* at 530. The district court nonetheless denied a stay for what it considered the futile exercise of returning to state court to present the claims. *Id.* Among the weightier statements by the *Ruiz* court, though perhaps not a holding, was this:

> We are given no rational reason to conclude that the equities run against Ruiz, despite the "fundamental unfairness" of his habeas proceedings . . . . Whatever be the explanation, in this difficult area of the law of capital punishment, we are met with the inescapable

---

involving another inmate. Once we construe the state court's ruling as having reached the merits as to this prisoner, equity compels our review of that ruling.

conclusion that the district court's balancing of equities was infected by its first holdings—that the claims of ineffective assistance of trial counsel were again not before it and that it had been correct in holding that the state court would not decide the case on a return to it. And of course if this first conclusion of the district court were sound then it lacked jurisdiction over the resulting "successive writ."

*Id.* at 530-31. On this basis, the *Ruiz* court found an abuse of discretion.

As in *Ruiz*, here there was strong concern expressed in the earlier Section 2254 proceedings as to the effectiveness of Balentine's prior counsel. The magistrate judge's Report and Recommendation of September 27, 2007, adopted by the district court, made these observations about Balentine's trial:

> No mitigation evidence concerning petitioner's background, childhood, or family was presented at his trial, and trial counsel called no witnesses at the punishment phase. Other than the criminal history from the prosecution, petitioner's counsel presented no facts about petitioner's background, childhood, or family to the jury. While this omission, if in fact it was an omission, presents a substantial question, it does not necessarily compel a finding of deficient performance if counsel's actions were based upon a reasonable tactical decision . . . . A decision to not present mitigating evidence may be reasonable if based upon "evidence in their investigation to suggest that a mitigation case, in its own right, would have been counterproductive, or that further investigation would have been fruitless." *Wiggins*, 539 U.S. at 525, 123 S. Ct. at 2537.
>
> . . .
>
> The fact that trial counsel may have determined the defense [of denying guilt] to be petitioner's best defense would not, however, justify a failure to investigate and obtain all available mitigation evidence. Indeed, before counsel could make a decision as to whether mitigation evidence should be offered, counsel would have to know what evidence there was. The record before this Court does not reflect the extent of trial counsel's investigation or knowledge of mitigation evidence at the time of trial. We only know none was presented. Therefore, a review of the merits of this claim would require this Court to allow further discovery, and/or hold an evidentiary hearing to hear testimony from trial counsel and defense investigators regarding the extent of the defense investigation in

19

preparation for the punishment phase of petitioner's trial, whether any mitigation evidence was obtained, and, if so, why it was not presented. Such additional discovery and an evidentiary hearing are not warranted, and, in fact, are prohibited by Fifth Circuit precedent because the claims asserted in grounds seven and eight are unexhausted and procedurally barred.

We interpret these points, based on a review of the record of the Section 2254 proceedings, to indicate that absent the exhaustion issue, there was reason for an evidentiary hearing. The *Ruiz* court made it clear that we review the denial of Rule 60(b) relief for an abuse of discretion, but that we exercise care if "denial of relief precludes examination of the full merits of the cause" because "in such instances 'even a slight abuse may justify reversal.'" *Id*. at 532 (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. 1981)).

Balentine's equities compare closely to those of *Ruiz* in these ways:

(1) There were serious concerns that constitutionally ineffective lawyering occurred due to counsel's failure to investigate for mitigation evidence.

(2) In the Section 2254 proceedings, the *Ruiz* district court found serious defects in trial court representation regarding investigating for mitigation evidence, but held the issue to be defaulted. Here the district court similarly adopted the magistrate judge's finding of serious issues of ineffectiveness, and stated that an evidentiary hearing would be needed to be certain.

(3) In the initial federal habeas cases for both, the inmate sought a stay and remand to state court, and both were denied as futile.

(4) In both, the Court of Criminal Appeals in considering the successive application under Article 11.071, Section 5, issued an order that, under the *Ruiz* interpretation, is not clearly based on an adequate state ground independent of the merits. Therefore, the merits by imputation were reached by the Texas court in the successive application in each case, vitiating the district court's finding that a stay and return to state court to exhaust would be futile.

No. 09-70026

(5) On return to federal district court, Rule 60(b) relief was denied.

*Ruiz* controls. The procedural hurdle regarding exhaustion that was perceived in the Section 2254 proceedings has been eliminated. The equities weigh in favor of Balentine in the same manner as they did for Ruiz. Balentine is entitled to have relief granted from the 2008 denial of a stay. The district court on remand should consider that Balentine now has an exhausted state *Wiggins* claim. That claim should be reviewed, in conjunction with any necessary evidentiary hearing, under the appropriate AEDPA deferential standards.

## CONCLUSION

We restate the reasons for this holding. Where the Court of Criminal Appeals dismisses a successive application with this boilerplate language, we cannot determine whether the decision relied on a state-law defect or a finding that federal constitutional law was not violated. Consequently, the Court of Criminal Appeals' order must be construed as having reached the merits of the federal constitutional issue. In the Section 2254 proceedings, the district court denied a stay for the claim to be exhausted in state court based on its belief of the futility of a stay; that belief has been vitiated. Finally, the equities for Rule 60(b)(6) relief are compelling when the failure to investigate and present available mitigation evidence has already been found in the Section 2254 proceedings to be a substantial issue.

We REVERSE the district court's order denying Balentine's Rule 60(b) motion and REMAND for consideration of the ineffective assistance of counsel claim. The stay of execution is CONTINUED until further order of this court.